Robert K. Fronk v. Commissioner.
Fronk v. Commissioner
Docket No. 62602.
United States Tax Court
T.C. Memo 1957-240; 1957 Tax Ct. Memo LEXIS 8; 16 T.C.M. (CCH) 1103; T.C.M. (RIA) 57240; December 30, 1957
*8 John B. Freiden, Esq., for the petitioner. Albert D. Greenfield, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax for the year 1953 in the amount of $6,817.87. The sole issue is whether gains realized from the sale of real property in the taxable year 1953 are taxable as capital gains or ordinary income. Findings of Fact The stipulated facts are found accordingly. Petitioner is an individual residing at 2419 Luckey Street, Cincinnati, Ohio. His return for the year 1953 was filed with the district director of internal revenue at Cincinnati, Ohio. During the year 1951, petitioner purchased 4 pieces of real property and sold 3 of such properties. On December 31, 1951, he held 12 pieces of real property. During the year 1952, petitioner purchased 5 pieces of real property and made 6 sales. During the taxable year 1953, petitioner purchased 22 pieces of real property, sold 19, and was holding 14 pieces on December 31, 1953. Thirteen of the 19 pieces of real property sold in 1953 were held less than 6 months. Nine pieces of real property were sold on the installment basis. The *9 income from the sales made in 1953 was $29,252.15 as shown in the following schedule: Date
Date
Contract
Income
Property Location
Acquired
Sold
Price
Profit
in 1953
2660 River Road
2/12/53
5/19/53
$ 8,950.00
$2,017.90
$ 287.61
1667 Hamer Street
7/29/53
8/28/53
8,500.00
1,722.78
283.19
2340Kenton Street
10/29/53
12/15/53
7,500.00
2,042.83
294.03
2173 Winchell Ave.
8/24/53
9/10/53
5,950.00
2,533.33
182.22
3409 Comfort St.
12/17/52
5/20/53
8,250.00
1,738.39
246.66
262 Calhoun St.
3/19/53
4/25/53
8,250.00
575.49
95.06
309 Stanley Ave.
1/10/53
6/ 2/53
9,000.00
3,020.30
426.72
1040 Wilstach
2/11/53
6/26/53
6,950.00
2,869.07
486.72
3929 Bordon St.
5/29/53
8/12/53
8,700.00
1,801.29
1,801.29
2662 River Rd.
2/15/53
4/25/53
8,950.00
2,028.00
2,028.00
3517 Schwartze
5/ 9/53
7/23/53
10,500.00
2,111.20
2,111.20
4152 Hamilton Ave.
8/18/53
12/10/53
12,500.00
1,465.82
1,465.82
3214 W. 8th St.
10/ 5/53
12/ 9/53
10,950.00
206.22
206.22
1607 Broadway
4/ /50
6/ /53
17,850.00
6,713.30
860.25
1802 Sycamore
2/11/53
9/ /53
8,750.00
3,597.76
3,597.76
146 McMicken Ave.
1946
1953
10,500.00
5,398.23
5,398.23
2208 Gilbert Ave.
5/20/52
3/10/53
9,000.00
441.55
441.55
2916 Central Pkwy.
3/25/52
1/25/53
19,500.00
5,850.53
5,850.53
2142 Ravine St.
1/12/49
3/27/53
12,500.00
3,189.09
3,189.09
*10 Of the 22 pieces of real property purchased during 1953, 9 pieces were held on December 31, 1953, as follows: Mortgage Balance
Date of
on December
Property
Acquisition
Cost
31, 1953
313 Charlotte
June
$ 7,653.20
$ 5,661.00
2427 Glenway
September
6,942.70
4,446.75
5712 Hamilton
April
8,344.84
7,203.33
2608 Liddell
April
5,603.00
3,853.78
2652 Linden
October
5,127.94
3,486.87
2502 Ohio
August
20,157.14
17,538.72
2658 River Road *
April
5,071.82
8,563.73
2660 River Road *
1816 Puite St.
December 14
4,122.00
4,500.00
Beekman St.
December 17
4,725.00
3,425.00
Six of such pieces of real property sold in 1953 did not produce any gross rental income in that year. In 1953 petitioner was listed in the Cincinnati and Suburban Bell Telephone Company directory as being engaged in real estate by having the abbreviated words real estate (rl. est.) following his name in the "white section" and by being listed in the classified section with the words "residential and *11 investment property" under his name. In 1953 petitioner circularized practicing attorneys in the metropolitan Cincinnati area to the effect that he was interested in the purchase of any real estate that they might desire to dispose of in the process of settling estates. Petitioner was not required under the Ohio statutes to have a real estate broker's license to purchase and sell real estate in his own behalf. In his individual income tax returns for the years 1951, 1952, and 1953, petitioner reported net income from the following sources. Interest on
land contracts
Realized gain
Used
Rental
or second
on sale of
Year
furniture
property
mortgages
real estate
1951
$772.78
$8,914.53 *
None
$ 7,004.56
1952
939.35
7,085.58 *
$ 482.34
18,764.35
1953
749.30
(759.38) **
3,405.85
30,188.31
Assessments of Federal income tax deficiencies, interest, and penalties, due and owing by petitioner for the years 1945 to 1951, inclusive, were made in April 1953, and warrants of distraint were issued on July 13, 1953. Petitioner made payment of the aforesaid *12 assessments for the years 1945 to 1951, inclusive, as shown in the following schedule: 1953
Total
Feb. 12
$5,080.85
$4,171.15
$1,176.51
$10,428.51
Feb. 20
2,571.49
Aug. 28
926.14
573.86
1,500.00
Sept. 2
1,338.73
161.27
1,500.00
Oct. 15
1,000.00
Oct. 29
494.10
5.90
500.00
Nov. 3
500.00
Nov. 9
500.00
Dec. 14
274.20
225.80
500.00
Dec. 15
1,500.00
Dec. 22
500.00
Dec. 29
500.00
$21,500.00
On his individual return for 1953, petitioner reported the gain realized from the sales of real property as capital gain. The respondent determined it was taxable as ordinary income. During the year 1953 petitioner enlarged his business to include not only his used furniture and rental business, but a general real estate business, and placed the capital assets acquired for investment in such real estate business. All the real properties sold by petitioner in the taxable year 1953 were properties held primarily for sale to customers in the ordinary course of his real estate business. Petitioner has failed to show which, if any, of the 6 real properties for which he claimed *13 long-term capital gain were sold for the purpose of paying his indebtedness to the Government. Opinion LEMIRE, Judge: Petitioner contends that the last 6 properties shown on the schedule of sales set forth in our Findings of Fact were purchased as investments for the purpose of rental income, and that respondent erred in not allowing the gain from their sale to be taxed as long-term capital gain. Five of such properties were acquired prior to the taxable year involved, and the sixth, to-wit, No. 1802 Sycamore, was acquired in the taxable year. The issue is one of fact and is to be viewed in the light of all the pertinent factors presented by the present record. . We do not understand that petitioner claims that he was not in the real estate business in 1953, and the facts found, most of which have been stipulated, clearly establish that most of his activity was devoted to such trade or business. Not only were there a substantial number of purchases, but a continuity and frequency of sales in 1953. Petitioner was the only witness, and his testimony related solely to the 6 parcels of the 19 sold which had been held more than 6 months. *14 No testimony was adduced as to the other 12 parcels which had been held less than 6 months. We recognize that an individual could hold real property for investment and also hold other real property for sale to customers in the ordinary course of his trade or business. This record does not persuade us that in the taxable year 1953, the petitioner was holding his property in two capacities. No explanation appears as to why petitioner claims exclusion from his real estate business of the 6 specific properties, but makes no contention as to the other 12 parcels bought and sold in 1953, other than the fact that the other 12 pieces were held for a period of less than 6 months, and the gain was fully taxable. Included among the 6 properties which petitioner claims were purchased for investment is No. 1802 Sycamore, which was purchased in 1953 and sold the same year after a holding period of 7 months. We think it is clear that the Sycamore property was not acquired for investment purposes. The income reported by petitioner in 1951, 1952, and 1953, from his several activities clearly shows that in the taxable year 1953, his major activity was the purchase and sale of real property *15 which was the principal source of income. Petitioner testified that the 6 real properties purchased for investment were sold in 1953 to obtain funds to pay tax assessments for prior years. The record shows that during the month of February 1953, petitioner paid approximately $13,000 on such prior assessments. During the months of January and February 1953, petitioner purchased 5 new pieces of real estate. No further payments were made on such assessments until August 28, 1953. During the period from March 1 to August 28, 1953, petitioner purchased an additional 11 pieces of real estate. These facts appear to us to disprove petitioner's contention that the sales of the 6 pieces of real estate in question were made for the purpose of discharging his indebtedness. From a careful analysis of all the evidence we conclude that all the real property sold in 1953 was held primarily for sale to customers in the ordinary course of petitioner's real estate business. The respondent's determination that the gain derived from the sale thereof is taxable as ordinary income is sustained. Decision will be entered for the respondent. Footnotes
*. 2660 River Road was sold on conditional sales contract on May 19, 1953. The mortgage balance shown applies to 2658 River Road and 2660 River Road.↩
*. Net rental property income or loss after depreciation. ↩
**. Net loss.↩